UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE ANDERSON CHEVROLET OF CHICAGO, LLC, | Case No. 1:20-cv-06161 |
| Plaintiff, | Judge Franklin U. Valderrama |
| vs. | Magistrate Judge Sunil R. Harjani |
| QBE INSURANCE CORPORATION, | |
| Defendant. | |

## QBE INSURANCE CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendant QBE Insurance Corporation ("QBE"), for its Answer and Affirmative Defenses to Plaintiff's Amended Complaint ("Complaint"), respectfully states as follows:

FACTS

1. Plaintiff Mike Anderson Chevrolet of Chicago, LLC (hereinafter "MACC") was at all relevant times an Illinois limited liability company under the parent company Mike Anderson Auto Group insured under a Policy of Insurance issued by Defendant QBE Insurance Corporation, doing business in Cook County, Illinois (hereinafter "QBE Policy") attached to this Amended Complaint as Exhibit "A" and incorporated herein, and Mike Anderson Auto Group payed the premium under the QBE Policy. Under the "ADDITIONAL INSURED COMPANY ENDORSEMENT" to the QBE Policy attached hereto as Exhibit "A", Plaintiff Mike Anderson Chevrolet of Chicago, LLC is an additional insured company under the QBE Policy.

**ANSWER: QBE admits that MACC was and/or is an Illinois limited liability company and does business in Cook County, Illinois. Answering further, QBE admits that it issued Policy Number QPL0766816 for the policy period of October 1, 2017 to October 1, 2018 under**

1

which MACC is listed as an entity qualifying as a Company pursuant to an Additional Insured Company Endorsement (the "Policy"), which is substantially similar to Exhibit 1 to the Complaint. QBE also admits that the premium was paid for the Policy. QBE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1 and therefore denies those allegations.

2. Defendant QBE Insurance Company, 55 Water Street, New York, New York 10041 was at all relevant times an insurance company providing insurance coverage and doing business in Cook County, Illinois.

**ANSWER: QBE denies that the Defendant in this action is "QBE Insurance Company." Answering further, QBE admits that it has offices at 55 Water Street, New York, New York, 10041 and, at various times, has provided insurance coverage to entities, and done business, in Cook County, Illinois. QBE lacks knowledge or information sufficient to form a belief about the truth of whether it was an insurance company providing insurance coverage and doing business in Cook County, Illinois "at all relevant times" and therefore denies this allegation.**

3. Jason Kolodzinski was at all relevant times the former general manager and employee of MACC.

**ANSWER: QBE admits that at certain times on or before approximately January 18, 2018 Jason Kolodzinski was employed by MACC as a general manager. QBE also admits that at certain times on or after approximately January 18, 2018, Kolodzinski was a former general manager and employee of MACC. QBE denies the remaining allegations of Paragraph 3.**

4. During the Policy Period under the QBE Policy Jason Kolodzinski as an employee of MACC committed "Employee theft" under the QBE Policy, acting alone or in collusion with others, resulting in substantial direct financial loss to MACC.

**ANSWER: QBE denies the allegations in Paragraph 4.**

5. A QBE Sworn Proof of Loss Claim (No. 565862N) was executed by the owner of Plaintiff MACC on or about March 1, 2018, attached to this Complaint as Exhibit "B", and incorporated herein, and submitted to Defendant QBE. The loss of Money, Securities or Property resulting from Theft or Forgery stated in the Proof of Loss Claim was "greater than $250,000 – (under investigation)." Since executing the Proof Claim Form investigation has revealed direct financial loss to Plaintiff in the amount of $588,800.00. An Amended Sworn Proof of Loss is attached to this Complaint as Exhibit "C" and incorporated herein.

**ANSWER: QBE lacks knowledge or information sufficient to form a belief about the truth of whether the owner of MACC executed the March 1, 2018 Proof of Loss attached as Exhibit B to the Complaint (the "Original POL") and therefore denies this allegation. Answering further, QBE admits that it received a copy of the Original POL, which states that it was executed by Mike Anderson as "Managing Member" of MACC and that the loss of Money, Securities, or Property resulting from Theft or Forgery stated in the Proof of Loss Claim was "> $250,000. – (under investigation)." QBE denies that since executing the Proof Claim Form (i.e., the Original POL) investigation has revealed direct financial loss to MACC in the amount of $588,800.00. QBE admits that Exhibit C to the Complaint is a document titled Amended Sworn Proof of Loss. QBE denies the remaining allegations of Paragraph 5.**

6. Plaintiff has made demand for coverage under the QBE Policy for the direct financial losses suffered as a result of the Employee theft covered under the QBE Policy.

**ANSWER: QBE admits that it received copies of Exhibit B and Exhibit C to the Complaint seeking coverage for purported loss under the Policy (the "Purported Loss"). QBE denies that coverage under the Policy has been established for the Purported Loss as identified in Exhibit B and Exhibit C to the Complaint and that such sums represent direct financial losses suffered as a result of Employee theft covered under the Policy. Answering further, QBE admits that, despite withholding documents and information necessary for QBE to complete its coverage investigation, counsel for Plaintiff issued a letter dated August 19, 2020 stating that they would "withhold filing" of the Complaint if QBE agreed to pay the amounts claimed in subparagraphs (a), (b), and (f) of Paragraph 10 to the Complaint. QBE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 6 and therefore denies those allegations.**

FEDERAL JURISDICTION – DIVERSITY OF CITIZENSHIP

7. Mike Anderson Chevrolet of Chicago, LLC is an Illinois limited liability company, whose members and their domiciles are listed below:

| MEMBER | DOMICILE |
| --- | --- |
| Michael J. Anderson | Illinois |
| Chris Anderson | Florida |
| Katy Props | Indiana |
| Paul Anderson | Indiana |
| Joan Scott | Indiana |
| Daniel C. Anderson | Minnesota |

QBE Insurance Corporation is a Pennsylvania corporation with its principal place of business in New York. Complete diversity jurisdiction exists.

**ANSWER: QBE admits it is a Pennsylvania corporation with its principal place of business in New York. QBE admits on information and belief the remaining allegations of Paragraph 7.**

AMOUNT IN CONTROVERSY EXCEEDS $75,000

8. MACC seeks to recover damages from QBE for the alleged Loss totaling $558,800.00 exclusive of interest and costs. Federal jurisdiction exists under 28 U.S. C. § 1332.

**ANSWER: QBE admits that MACC seeks to recover damages from QBE in this action for the Purported Loss in the amount of $588,800.00, exclusive of interest and costs. QBE admits on information and belief the remaining allegations of Paragraph 8.**

COUNT I

9. Plaintiff incorporates the paragraphs alleged above as if fully restated and re-alleged.

**ANSWER: QBE incorporates its responses to the above paragraphs as if fully stated herein.**

10. The specific acts of Employee theft committed by Jason Kolodzinski during the relevant times of employment and the direct financial loss suffered by Plaintiff are as follows:

**ANSWER: QBE denies that the acts alleged in subparagraphs (a) through (f) of Paragraph 10 are Employee theft committed by Jason Kolodzinski. QBE also denies that the purported allegations in subparagraphs (a) through (f) of Paragraph 10 are direct financial loss suffered by MACC.**

| | |
|---|---|
| **(a). Direct Mail. Advertising.** Kolodzinski claimed to have used a company called J&N for mail advertising. Mike Anderson Chevy was billed $191,000, but no mail was sent. The owner of a graphic design firm used by J&N said that no work was actually done. Kolodzinski failed to submit the materials to Mike Anderson for review prior to mailing, contrary to his instructions. He was told to stop but continued to submit invoices that were paid by the dealership without Mike Anderson's knowledge or approval. He did not submit the proper receipts from the USPS for the alleged | $191,000 |

| | |
|---|---|
| mailings. The dealership was told that the one purported USPS receipt Kolodzinski submitted was fraudulent. | |

**ANSWER: QBE admits that Kolodzinski purportedly used a company called J & N Marketing Inc. for mail advertising on behalf of MACC. QBE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of subparagraph (a) to Paragraph 10 and therefore denies those allegations.**

| | |
|---|---|
| **(b.) Radio Advertising.** Kolodzinski claims to have placed radio ads through a company called TKC in the amount of $75,000. TKC, despite requests, refused to submit proof of running the ads. To pay TKC invoices, Kolodzinski, instead of mailing the checks, gave the checks to someone who picked them up at the dealership. The checks were cashed at a nearby currency exchange. | $75,000 |

**ANSWER: QBE admits that Kolodzinski purportedly used a company called TKC Entertainment for radio advertising on behalf of MACC. QBE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of subparagraph (b) to Paragraph 10 and therefore denies those allegations.**

| | |
|---|---|
| **(c). Purchase of Used Cars from Epic.** Kolodzinski purchased 91 cars from a company called Epic from March 2016 through January 2018. These cars were purchased at prices significantly higher than market, and many had hidden damages the led to and caused many customer complaints. Losses are estimated at approximately $131,000. Kolodzinski was told to stop purchasing cars from Epic in October 2017 but continued to do so surreptitiously until he was terminated in January 2018. A text message from Kolodzinski indicated that he did it | $131,000 |

| | |
|---|---|
| because he needed money, which suggests that a kickback was involved. | |

**ANSWER: QBE admits that Kolodzinski purportedly purchased, on behalf of MACC, 91 cars from a company known as Epic Motorsports Inc. ("Epic") from March 18, 2016 through January 18, 2018, including approximately 11 cars purchased after an October 31, 2017 email instructing him to stop purchasing cars from Epic. QBE also admits that MACC has estimated it incurred a purported loss of approximately $131,000 in transactions related to cars purchased from Epic. QBE further admits that it has been provided with an image of a text message purportedly from Kolodzinski stating that he bought cars from "Rory" "cause I need money." QBE denies that such text message suggests that a kickback was involved. Answering further, QBE lacks knowledge or information sufficient to form a belief about truth of whether the cars were purchased from Epic at prices significantly higher than market or whether many of such cars had hidden damages that led to and caused many customer complaints and therefore denies those allegations. QBE denies the remaining allegations of subparagraph (c) to Paragraph 10.**

| | |
|---|---|
| **(d). Purchase of Cars from Sir Hooptie.** Kolodzinski caused the dealership to lose $5800 for two cars purchased from Sir Hooptie, and associated repair and accessory charges. Kolodzinski had been told not to deal with this company | $5,800 |

**ANSWER: QBE denies the allegations in subparagraph (d) of Paragraph 10.**

| | |
|---|---|
| **(e). Inflated Repair Charges.** Kolodzinski sent cars to a company called AC and incurred inflated and sometimes unnecessary repair charges of approximately $176,000. These charges were incurred even though the dealership has its own mechanics on staff. Some of | $176,000 |

| | |
|---|---|
| those repair charges were for cars purchased from AC and Sir Hooptie. | |

**ANSWER: QBE admits that Kolodzinski purportedly sent cars to companies known as AC Customs Inc. and AC Kustoms Corp. for repairs or customization services, which appear to include some cars purchased from Epic and Sir Hooptie. QBE also admits that MACC has mechanics on its staff. QBE denies the remaining allegations of subparagraph (e) to Paragraph 10.**

| | |
|---|---|
| **(f). Personal Trade-In.** Kolodzinski traded-in a Corvette he owned, and give himself an inflated appraisal of the car, at approximately $10,000 more than it was worth. | $10,000 |

**ANSWER: QBE admits that on or about January 12, 2018 Kolodzinski traded-in a Corvette he owned in a transaction with MACC. QBE denies the remaining allegations in subparagraph (f) to Paragraph 10.**

11. Demand has been made on Defendant QBE for coverage under the QBE Policy for the direct financial losses stated above in paragraph 10.

**ANSWER: QBE admits that it received a letter from Plaintiff's counsel dated August 19, 2020 stating that they would "withhold filing" of the Complaint if QBE agreed to pay the amounts claimed in subparagraphs (a), (b), and (f) of Paragraph 10 to the Complaint. QBE denies the remaining allegations of Paragraph 11.**

12. Defendant has not compensated Plaintiff for the losses suffered by Plaintiff covered under the QBE Policy which is a breach the contractual and fiduciary obligations by Defendant QBE Insurance Corporation under the QBE Policy.

**ANSWER: QBE admits that it has not compensated Plaintiff for any portion of the Purported Loss, including any alleged loss identified in Paragraph 10. QBE denies the remaining allegations of Paragraph 12.**

13. WHEREFORE, Plaintiff Mike Anderson Chevrolet of Chicago, LLC prays for judgment against Defendant QBE Insurance Corporation in the amount of $588,800.00 plus costs of this action.

**ANSWER: QBE admits that Plaintiff prays for judgment against QBE as set forth in Paragraph 13, but denies that Plaintiff – or any other entity – is entitled to such a judgment.**

14. Plaintiff demands trial by jury.

**ANSWER: QBE admits that Plaintiff demanded a trial by jury.**

## GENERAL DENIAL

Pursuant to the Federal Rule of Civil Procedure 8(b)(3), QBE generally denies all of the allegations in Plaintiff's Complaint except for those that it specifically admits.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*
**(Failure to Mitigate)**

Plaintiff cannot recover against QBE to the extent that it has failed to mitigate its purported damages, including by failing to seek recovery from Kolodzinski or the persons or entities involved in the transactions comprising the Purported Loss.

### *Second Affirmative Defense*
**(Unclean Hands)**

Plaintiff cannot recover against QBE, in whole or in part, due to the doctrine of unclean hands, including with respect to the conduct that led to the Purported Loss and the conduct in frustrating QBE's investigation of the Purported Loss.

### *Third Affirmative Defense*
**(Fraud)**

Plaintiff cannot recover against QBE to the extent that the Policy was procured by fraud, including with respect to representations made to QBE regarding the Insureds' operations regarding verification of invoices and vendors.

### *Fourth Affirmative Defense*
**(Misrepresentations)**

Plaintiff cannot recover against QBE to the extent that the Policy was procured based on misrepresentations, including with respect to representations made to QBE regarding the Insureds' operations regarding verification of invoices and vendors.

### *Fifth Affirmative Defense*
**(Failure to Cooperate)**

Plaintiff cannot recover from QBE under the Policy because Plaintiff breached its obligations under Section VI. of the Crime Coverage Part in the Policy by, among other things, failing to cooperate with QBE's investigation.

### *Sixth Affirmative Defense*
**(Employee Theft Insurance Clause Not Implicated)**

Plaintiff cannot recover from QBE under the Employee Theft Insuring Clause in the Crime Coverage Part in the Policy to the extent that Purported Loss is not a direct loss of Money, Securities, or Property sustained by an Insured resulting from Theft or Forgery by an Employee.

### *Seventh Affirmative Defense*
**(Exclusion G – Income)**

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss represents income not realized, which is precluded by Exclusion G.

### Eighth Affirmative Defense
### (Exclusion H – Indirect or Consequential Loss)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss represents indirect or consequential loss of any kind (other than Expenses), which is precluded by Exclusion H.

### Ninth Affirmative Defense
### (Exclusion M – Trading Losses)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss is based upon, arising out of, or resulting from any trading of Property not resulting in Improper Financial Gains to an Employee, which is precluded by Exclusion M.

### Tenth Affirmative Defense
### (Exclusion P – Broker/Independent Contractor)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss is caused by any broker, commission, merchant, factor, consignee, contractor, independent contractor (other than an Independent Contractor) or other similar agent or representative, which is precluded by Exclusion P.

### Eleventh Affirmative Defense
### (Exclusion Q – Prior Dishonesty)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss is caused by an Employee and sustained by an Insured after an Executive or Insurance Representative becomes aware of a Theft, Forgery, or other fraudulent, dishonest, or criminal act valued at $1,000 or more and committed while in the employ or service of an Insured, which is precluded by Exclusion Q.

### *Twelfth Affirmative Defense*
### (Retention)

Plaintiff cannot recover from QBE under the Employee Theft Insuring Clause in the Crime Coverage Part in the Policy for loss that does not exceed the $25,000 Retention.

### *Thirteenth Affirmative Defense*
### (Not Discovered During Policy Period)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy for Purported Loss not Discovered during the Policy Period of October 1, 2017 to October 1, 2018.

### *Fourteenth Affirmative Defense*
### (Other Policy Provisions)

Plaintiff cannot recover from QBE under the Crime Coverage Part in the Policy to the extent that the Purported Loss does not satisfy other policy provisions not set forth in the affirmative defenses above or other policy provisions that may limit or preclude coverage. Because Plaintiff filed suit prior to allowing QBE to complete its investigation of the Purported Loss, QBE is unable to identify all potentially relevant policy provisions that may impact coverage. Therefore, QBE's affirmative defenses serve to preserve QBE's rights and put Plaintiff on notice that QBE may assert any and all relevant policy provisions in connection with the Purported Loss.

Dated: December 29, 2020

Respectfully submitted by:

**QBE INSURANCE CORPORATION**

/s/  Christopher D. Blum

Stefan R. Dandelles (6244438)
Christopher D. Blum (6302424)
KAUFMAN DOLOWICH & VOLUCK, LLP
135 S. LaSalle Street, Suite 2100
Chicago, IL 60603
(312) 759-1400
sdandelles@kdvlaw.com
cblum@kdvlaw.com
*Counsel for QBE Insurance Corporation*

4850-9298-6069, v. 1