UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE ANDERSON CHEVROLET OF CHICAGO, LLC, | ) ) ) | Case No. 1:20-cv-06161 |
| Plaintiff, | ) ) | Judge Franklin U. Valderrama |
| vs. | ) ) | Magistrate Judge Sunil R. Harjani |
| QBE INSURANCE CORPORATION, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION REGARDING THE INSUFFICIENCY OF PLAINTIFF'S ANSWER TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION PURSUANT TO RULE 36**

NOW COMES Defendant QBE Insurance Corporation ("QBE"), by and through its attorneys Kaufman Dolowich & Voluck, LLP, and for its Motion regarding the insufficiency of Plaintiff's Answer to Defendant's First Set of Requests for Admission Pursuant to Rule 36, states as follows:

1. On November 4, 2021, QBE served Plaintiff with its First Set of Requests for Admission. (*See* QBE's First Set of Reqs. for Admission, attached as **Exhibit A**.)

2. On December 6, 2021, Plaintiff responded to QBE's First Set of Requests for Admission (*See* Pl.'s Answer to QBE's First Set of Reqs. for Admission, attached as **Exhibit B**.)

3. Rule 36(4) of the Federal Rules of Civil Procedure provides that:

(4) *Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

1

4. Where an answer does not comply with Rule 36, the Court may order either that the matter is admitted or an amended answer be served. Fed. R. Civ. P. 36(5) ("The requesting party may move to determine the sufficiency of an answer or objection.")

5. For the reasons set forth herein, Plaintiff's Responses to QBE's Requests for Admission are deficient.

6. Request No. 1 requested that Plaintiff "[a]dmit that the Claim with respect to Epic and Sir Hooptie is based solely on MACC's position that it did not realize a profit on the re-sale of certain cars purchased from Epic and Sir Hooptie." In response, Plaintiff stated:

> Purchases were made from Epic and Sir Hooptie by Jason Kolodzinski without the authorization of MACC. Many, if not all, of the cars from Sir Hooptie and Epic were cars that were low quality, high mileage, or had hidden damage, and were purchased at a price right about their market value. Because the condition of these cars were not acceptable, they had to be sold after repairs were made at MACC's cost. In some cases, irate customers returned the cars based on the discovery of hidden damages, and MACC had to cover the additional costs. A text message from Jason Kolodzinski to Rory at Epic reflects that Jason was getting money with every purchase. These are kickbacks, *i.e.,* stealing from the company. As stated, the plaintiff denies request 1 for admission.

Plaintiff denied Request No. 1, but its answer did not fairly respond to the substance of the request. As drafted, it is unclear whether Plaintiff is stating that the statements in its answer are the basis for its Claim with respect to Epic and Sir Hooptie. Moreover, it is unclear whether Plaintiff is stating that the notion that it purportedly did not realize a profit on the re-sale of certain cars purchased from Epic and Sir Hooptie (which is referenced in QBE's request but not addressed in Plaintiff's response) is a basis for Plaintiff's claim for coverage. Accordingly, Plaintiff should be required to re-answer this request in a manner that adheres to Rule 36.

7. Request No. 2 requested that Plaintiff "[a]dmit that MACC has no evidence that J&N did not provide advertising services to MACC." Plaintiff responded:

> J&N did not submit any advertising to MACC for preapproval by MACC management or MACC legal counsel as was required. The samples of ads as provided in discovery contain copy [sic] that never would have been approved by MACC for either legal or policy reasons. MACC also received a copy of a message from Bill Thompson that a graphic designer used by J&N stated that the mailer was a phony and never sent. She stated that the owner of J&N, Nick, said it was the easiest money he had ever made. If any ads were mailed by J&N, they were done for the benefit of Jason Kolodzinski and not for the benefit of MACC. As stated, the plaintiff denies request 2 for admission.

Plaintiff did not admit Request No. 2, and its explanation in its answer fails to fairly respond to the substance of QBE's request. Whether J&N provided advertisements for pre-approval by MACC management or MACC legal counsel is irrelevant to the request that Plaintiff admit that it has no evidence that J&N did not provide advertising services on behalf of MACC. Also irrelevant is the statement that a third party supposedly told another third party (i.e., hearsay within hearsay) that supposedly told MACC that "the" mailer was "phony and never set." Similarly, the statement that "[i]f any ads were mailed by J&N, they were done for the benefit of Jason Kolodzinski and not for the benefit of MACC" is an assertion that does not address QBE's request that Plaintiff admit that MACC has no evidence that any advertising services were provided by J&N. Accordingly, Plaintiff's denial is improper.

       8.      Request No. 3 requested that Plaintiff "[a]dmit that MACC has no evidence that TKC did not provide advertising services to MACC." Plaintiff responded:

> TKC did not provide evidence that any advertising services were performed to MACC, notwithstanding the industry requirement that the broadcast of every ad is documented with an affidavit. TKC never produced notarized scripts. TKC cashed checks provided by Jason at a local currency exchange in close proximity to MACC. In addition, MACC had a policy against radio ads, and Jason Kolodzinski was told not to run radio ads. There would be no rational reason to run ads on a limited coverage radio station that broadcasts in Polish except after midnight. As stated, the plaintiff denies request 3 for admission.

Once again, Plaintiff fails to fairly respond to the substance of the request. None of the statements set forth in Plaintiff's answer to Request No. 3 evidence that TKC did not provide advertising

services on behalf of MACC. As such, Plaintiff's denial is improper and Plaintiff should be required to re-answer this request.

9. Request No. 4 requested that Plaintiff "[a]dmit that during 2016 through 2018, factors in a used car's sale price included market demand, market supply, and the duration of time that a car sits on MACC's lot." Plaintiff's response was that:

> These are among the factors that influence a sale price for all vehicles including condition, age, accessories, "Black Book" and similar published prices. However, for the vast majority of used cars sold by MACC, the purchase price and the resale price are set so that MACC makes a profit and only sells a high-quality vehicle that will not damage the reputation of the dealership. As stated, the plaintiff denies request 4 for admission.

Plaintiff's response contradicts itself. Plaintiff first acknowledges that the factors listed in QBE's request are "among the factors that influence a sale price. . ." but goes on to deny the Request, with additional irrelevant and self-serving narrative. Plaintiff should be ordered to admit Request No. 4.

10. Request No. 5 requested that Plaintiff "[a]dmit that only approved vendors received a NAD number within MACC's account payable system between 2016 through 2018." In response, Plaintiff stated that "'Approval of a vendor in the NAD system is a mechanical process and does not represent an evaluation of the quality of the products or services or the reputation or honesty of the vendor. As stated, the plaintiff denies request 5 for admission." Plaintiff's response is evasive at best. Plaintiff purports to deny Request No. 5, but it does not fairly respond to the substance of the request and rather launches into a tangent about what it believes approval does or does not represent. It is a simple question that does not bear on quality of work or services of vendors. Plaintiff should be ordered to re-answer Request No. 5.

11. Request No. 6 requested that Plaintiff "[a]dmit that MACC has no evidence establishing that Jason Kolodzinski had an ownership interest in Epic, J&N, TKC, Sir Hooptie or AC Customs/Kustoms while he was employed at MACC." In response, Plaintiff claims:

> We do not know the ownership structure of any of the above companies, and given that there is evidence of payments by some or all of the companies to Jason Kolodzinski, the probability of an ownership interest is high. However, plaintiff has insufficient knowledge or information to either admit or deny request 6.

Again, Plaintiff fails to address the Request. The Request seeks an admission about Plaintiff's actual knowledge (i.e., that it had no evidence to establish Jason Kolodzinski's ownership interest in the named entities). Plaintiff's suggestion that a payment made to an individual somehow establishes a high probability if ownership is completely baseless and speculative. Certainly, Plaintiff cannot claim that it lacks knowledge of what evidence it may or may not have.[1] Accordingly, Plaintiff should be ordered to re-answer Request No. 6.

12. Request No. 7 requested that Plaintiff "[a]dmit that MACC retained AC Customs and/or AC Kustoms to perform body work on cars in 2016 and 2017." In response, Plaintiff stated "Jason Kolodzinski retained AC Customs/Kustoms to perform body work. It was without the knowledge or approval of senior management. As stated, the plaintiff denies request 7 for admission." Plaintiff's response here again fails to respond to the substance of the request. Plaintiff's entire case rests on the premise that Jason Kolodzinski retained certain vendors as general manager of Plaintiff. It now seemingly seeks to avoid admitting facts that it itself relies on. Moreover, for the reasons stated in the following paragraph, Plaintiff's own Rule 30(b)(6) witness testified that Plaintiff retained AC Kustoms to perform work in 2017. Accordingly, Plaintiff should be ordered to re-answer Request No. 7.

---

[1] Plaintiff also violates Rule 36 by asserting a lack of knowledge or information without stating that "it has made reasonable inquiry that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

13. Request No. 8 requested that Plaintiff "[a]dmit that MACC retained AC Customs and/or AC Kustoms to perform mechanical or other non-body related work on cars during a labor strike in 2017." In response, Plaintiff stated that "Jason Kolodzinski retained AC Customs/Kustoms to perform mechanical or other non-body related work during the strike. As stated, the plaintiff denies request 8 for admission." Plaintiff's response contradicts the testimony of its own Rule 30(b)(6) witness, Mr. Anderson, who testified:

> Q. And then you mentioned the strike a few times now. Were there many strikes in 2017 or was there one long strike?
> A: The one. It lasted forever. It was - - oh, my gosh, it was - - well, you could pull it. It was public record I'm sure. Two and a half months maybe.
> Q: Okay. What happened - - with respect to the cars that were in line for service, what happened to those cars if your workers were on strike?
> A: I told you earlier. I said the ones that we could sell we would sell. The ones that we would need to get checked we'd get checked at AC Kustoms. . .

(Anderson Dep., 159:9-24, attached as **Exhibit C**.) Plaintiff cannot have its corporate representative testify under oath at his deposition that Plaintiff had retained AC Kustoms to perform work during the 2017 strike, and now deny this request for admission. Accordingly, Plaintiff should be ordered to admit this request.

14. Request No. 9 requested that Plaintiff "[a]dmit that MACC purchased more than 250 cars from Epic between 2016 and 2018 that were re-sold by MACC for a profit." In response, Plaintiff stated "This information is not available since the only records that were retained beyond the normal 24-month retention period were the transactions that resulted in a loss as requested by QBE. As stated, the plaintiff denies request 9 for admission." As an initial matter, Plaintiff's denial is inappropriate because at best, its response reflects that Plaintiff lacked knowledge or information to admit the Request. However, Plaintiff's response is non-sensical. Under 625 ILCS 5/5-401.2 and IAC 1020.20, automobile dealers shall maintain for a period of three years records relating to the acquisition and disposition of used vehicles. Moreover, on November 19, 2021, prior to

6

Plaintiff's submission of its Answers to QBE's First Set of Requests to Admit, QBE's counsel provided 178 pages of documents received from Epic in relation to 397 cars purchased from Epic. (See November 19 Email, attached as **Exhibit D** (without enclosures).) Plaintiff's answer to Request No. 9 is not accurate and Plaintiff should be required to re-answer.

15. Request No. 10 requested that Plaintiff "[a]dmit that all payments to all vendors at issue in this case were reviewed and processed by MACC employees other than Kolodzinski." In response, Plaintiff stated:

> Payments to all vendors selected by Jason Kolodzinski were approved by Jason Kolodzinski. No review was performed by the low-level staff who processed invoices other than to match the numbers on the invoices. Jason Kolodzinski intentionally defeated the spending controls on these payments by telling these low-level employees that since he approved it, no other approval was needed, and by ordering the low-level staff not to mail payments to the vendors but to give the checks to him. As stated, the plaintiff denies request 10 for admission.

Plaintiff again fails to fairly respond to the substance of the request and in the process contradicts itself. Plaintiff cannot both admit that low-level staff processed invoices and matched numbers on the invoices, while contemporaneously denying this request. Moreover, this assertion does not appear complete or accurate. Plaintiff's former controller Barbara Flores testified that she would be secondarily responsible for verifying that all the proper documentation needed to issue a check to the subject vendors was present as she would put her initials in the corner of the check. (Flores Dep. 77:10-23, attached as **Exhibit E**.) Accordingly, Plaintiff should be required to re-answer.

16. The purpose of requests for admission is to expedite and streamline litigation, and to save litigants valuable time and substantial money. *See Kelly v. McGraw-Hill Companies, Inc.*, 279 F.R.D. 470, 472 (N.D. Ill. 2012). However, Plaintiff has attempted to circumvent the purpose of Rule 36 by offering inappropriate denials, coupled by irrelevant and sometimes non-sensical explanations to same. Plaintiff continues to be evasive in an attempt to muddy the waters, avoid a

summary judgment ruling against it, and frustrate the legitimate efforts of QBE to discover the facts.

17. In compliance with Local Rule 37.2, QBE's counsel attempted to meet and confer with Plaintiff's counsel on December 17, but Plaintiff's counsel failed and refused to make themselves available. (*See* December 17, 2021 Emails (1)-(3), attached as **Exhibits F, G, and H**.)

WHEREFORE, Defendant QBE Insurance Corporation respectfully requests that this Honorable Court enter appropriate relief through an Order compelling Plaintiff to admit and/or re-answer each request set forth in QBE's First Set of Requests for Admission, attorney's fees for drafting this Motion, and for any other and further relief as the Court deems appropriate.

Date: December 17, 2021

Respectfully submitted,

KAUFMAN DOLOWICH & VOLUCK, LLP

*/s/ Stefan R. Dandelles*
Attorneys for Defendant QBE Insurance Corporation

Stefan R. Dandelles (ARDC No. 6244438)
Jean Y. Liu (ARDC No. 6321017)
KAUFMAN DOLOWICH & VOLUCK, LLP
135 S LaSalle St., Ste. 2100
Chicago, Illinois 60603
(312) 759-1400
sdandelles@kdvlaw.com
jliu@kdvlaw.com