**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MIKE ANDERSON CHEVROLET OF              )
CHICAGO, LLC,                           )
                                        )       Case No. 1:20-cv-06161
            Plaintiff,                  )
                                        )       Judge Franklin U. Valderrama
      vs.                               )
                                        )       Magistrate Judge Sunil R. Harjani
QBE INSURANCE CORPORATION,              )
                                        )
            Defendant.                  )

**DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO**
**FULLY AND ACCURATELY RESPOND TO QBE'S**
**WRITTEN DISCOVERY REQUESTS PURSUANT TO F.R.C.P.37(A)(3)(B)(IV)**

NOW COMES Defendant QBE Insurance Corporation ("QBE"), by and through its

attorneys Kaufman Dolowich & Voluck, LLP, and for its Motion to Compel Plaintiff to Fully and

Accurately Respond to QBE's Written Discovery Requests Pursuant to F.R.C.P.37(a)(3)(B)(iv),

states as follows:

1.      This lawsuit arises out of an insurance claim made by Plaintiff under an insurance

policy issued (the "Policy") by QBE with respect to certain actions purportedly taken by Plaintiff's

former employee, Jason Kolodzinski, allegedly resulting in a loss to Plaintiff.

2.      By letters dated April 20, 2018, October 3, 2018, July 22, 2019, and February 6,

2020, QBE requested from Plaintiff information needed to evaluate Plaintiff's claim for coverage.

(*See* April 20, 2018, October 3, 2018, July 22, 2019, February 6, 2020, and September 4, 2020

letters, collectively attached as **Exhibit A**.) Instead of fully responding to these letters with the

requested information and documents, Plaintiff initiated this lawsuit. (Dkt. 1-1.)

3.      On December 9, 2020, Plaintiff filed its Amended Complaint, which is the

operative complaint in this lawsuit. (Dkt. 20.) Plaintiff alleges therein that Jason Kolodzinski

committed "Employee Theft" - i.e., an unlawful taking of money - giving rise to coverage under the Policy. Specifically, Plaintiff seeks to recover $588,800 from QBE composed of six different components of alleged loss:

    (a) $191,000 in connection to direct mail advertising for the benefit of Plaintiff with a company called "J&N";

    (b) $75,000 in connection to radio advertising for the benefit of Plaintiff with a company called "TKC";

    (c) $131,000 in connection to used car purchases from a company called "Epic";

    (d) $5,800 in connection to car purchases by Plaintiff from a company called "Sir Hooptie";

    (e) $176,000 in connection to car repairs on cars owned by Plaintiff with a company called "AC"; and

    (f) $10,000 in connection with a personal vehicle trade-in by Mr. Kolodzinski.

    4.    QBE has issued written discovery to Plaintiff tailored to issues relevant to Plaintiff's claims and QBE's defense in this matter and Plaintiff has failed to fully respond to this written discovery.

    5.    "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1). Where a party fails to produce documents pursuant to F.R.C.P. 34, the party seeking such F.R.C.P. 34 responses may move for an order compelling production. F.R.C.P. 37(a)(3)(B)(iv). The court has broad discretion when reviewing a discovery dispute between parties and "should

independently determine the proper course of discovery based upon the arguments of the parties."
*See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

6.      For the reasons set forth herein, QBE respectfully requests that this Honorable Court compel Plaintiff to fully respond to the written discovery propounded to date, as such Plaintiff's failure to provide full and accurate responses unjustly prejudices QBE in this litigation.

## QBE's First Set of Requests for Production

7.      On January 15, 2021, QBE served Plaintiff with its First Set of Requests for Production, which included the requests for documents and information that remained outstanding from QBE's ongoing claim investigation. (*See* QBE's First Set of Requests for Production, attached as **Exhibit B**.)

8.      On February 16, 2021, Plaintiff responded to QBE's First Request for Production. (*See* Pl.'s Response to QBE's First Set of Requests for Production, attached as **Exhibit C**.) Plaintiff responded to each of QBE's 12 Requests with identical responses of:

> On October 3, 2018 QBE Insurance Corporation, through its counsel, sent via email a detailed letter request for documents and information directly to its insured Mike Anderson Chevrolet of Chicago, LLC, in addition to hard copy materials previously provided by the insured relating to the proof of loss ("POL") as referenced in the letter, attached hereto, as "Exhibit A". Mike Anderson Chevrolet of Chicago, LLC responded with detailed Answers, attached as Exhibit "B", and produced documents and records in its possession, custody and control. Following additional communications counsel for Mike Anderson Chevrolet of Chicago, LLC provided additional information and documents to counsel for QBE Insurance Corporation via letter data August 19, 2020, attached hereto as Exhibit "C", prior to filing this lawsuit. Documents, records and information responsive to this request in Plaintiff's possession, custody or control have previously been supplied to Defendant via hard copy and for inspection and copying. Any additional relevant information is believed to be in the hands of non-parties and subpoenas have issued and being issued for relevant documents and records.

Plaintiff did not object to any of these Requests or provide any documents in response to same.

9.      On April 8, 2021, QBE's counsel informed Plaintiff's counsel by phone that QBE did not believe that Plaintiff fully responded to QBE's First Set of Requests for Production. On

April 9, 2021, QBE's counsel issued a deficiency letter. (*See* April 9, 2021 Deficiency Letter, attached as **Exhibit D**.) Therein, QBE requested that Plaintiff cure the deficiencies identified therein, and to the extent that Plaintiff did not have any unproduced responsive documents in its possession, QBE requested that Plaintiff affirmatively state so.

10.     Pursuant to this Court's April 19, 2021 order (Dkt. 29) and Local Rule 37.2, on May 25, 2021, QBE's counsel emailed Plaintiff's counsel requesting a telephonic meeting to discuss the written discovery deficiencies identified in QBE's counsel's deficiency letter. (*See* May 25, 2021 Email, attached as **Exhibit E**.) In response, Plaintiff's counsel noted that he was unavailable until June 1, the same day as this Court's deadline to file a Motion to Compel with respect to written discovery deficiencies. (*See* May 26, 2021 Email, attached as **Exhibit F**.)

11.     To abide by the Court's June 1 deadline, QBE's counsel filed a Motion to Compel (Dkt. 31), seeking an order compelling Plaintiff to cure the deficiencies identified in QBE Counsel's April 9 letter and to fully answer QBE's First Set of Requests for Production.

12.     On June 2, 2021, this Court acknowledged that QBE's Motion to Compel (Dkt. 31) was filed to meet the Court's deadline, ordered the Parties to meet and confer by June 11, 2021, and struck same with leave to refile (Dkt. 32).[1]

13.     On June 10, 2021, the Parties telephonically met and conferred regarding the deficiencies raised in QBE's previously filed Motion to Compel. That same day, and at Plaintiff's counsel's request, QBE's counsel provided an October 3, 2018 letter and a September 4, 2020 letter issued by QBE to Plaintiff's counsel. (*See* June 10, 2021 Email, attached as **Exhibit G**.)

---

[1] It appears that the Court's order inadvertently refers to Plaintiff as Defendant, and vice versa.

14.     The Parties again telephonically met and conferred on June 18, 2021, at which point Plaintiff agreed to provide a supplemental response to QBE's First Request for Production by June 25, 2021. (*See* June 22, 2021 Email, attached as **Exhibit H.**)

15.     On June 24, 2021, Plaintiff served a supplemental response to QBE's First Request for Production. (*See* Plaintiff's Supplemental Response to QBE's First Set of Requests to Produce, attached as **Exhibit I**.) Plaintiff responded to QBE's 12 Requests with identical responses of:

> On October 3, 2018 QBE Insurance Corporation, through its counsel, sent via email a detailed letter request for documents and information directly to its insured Mike Anderson Chevrolet of Chicago, LLC, in addition to hard copy materials previously provided by the insured relating to the proof of loss ("POL") as referenced in the letter, attached hereto, as "Exhibit A". Mike Anderson Chevrolet of Chicago, LLC responded with detailed Answers, attached as Exhibit "B", and produced documents and records in its possession, custody and control. Following additional communications counsel for Mike Anderson Chevrolet of Chicago, LLC provided additional information and documents to counsel for QBE Insurance Corporation via letter data August 19, 2020, attached hereto as Exhibit "C", prior to filing this lawsuit. Documents, records and information responsive to this request in Plaintiff's possession, custody or control have previously been supplied to Defendant via hard copy and for inspection and copying. Any additional relevant information is believed to be in the hands of non-parties and subpoenas have issued and being issued for relevant documents and records.
>
> SUPPLEMENTAL RESPONSE:
>
> Documents and information responsive to this request in plaintiff's possession and control have been made available to defendant. Additionally, plaintiff has served on non-parties subpoenas for documents requesting specific relevant information. Counsel for defendant participated in the language of the subpoena requests. Documents received pursuant to these subpoenas are being shared with defendant. Thus far, the documents received have been substantially incomplete with the specific requests included in the subpoenas. Several of the key non-party witnesses are represented by counsel. Counsel for plaintiff has been in communication with counsel for these non-party witnesses in order to obtain full compliance with the subpoenas without the necessity of presenting motions to compel. These discussions are ongoing. These documents are necessary for depositions of the non-party witnesses presently scheduled pursuant to Subpoenas for Depositions served on the non-party witnesses.

Plaintiff again did not object to these Requests and did not produce any documents.

16.     On July 8, 2021, the Parties again telephonically met and conferred. Later that day,

QBE's counsel issued to Plaintiff's counsel an email, in relevant part noting:

> As you know, Rule 34 permits a requestor to obtain copies of certain items in
> the responding party's possession, custody, or control. As underscored in our
> phone call earlier today, QBE's First Set of Requests for Production seeks only
> items within MACC's possession, custody, or control. References in MACC's
> Responses to outstanding subpoenas are not relevant. Notwithstanding,
> MACC's Responses to date are unclear as to whether MACC has fully
> responded to QBE's Requests. We respectfully refer you to the points made in
> our April 9 deficiency letter and again request that if no other responsive
> documents in MACC's possession, custody, or control exist with respect to any
> of QBE's Request, that MACC affirmatively state so. As discussed earlier
> today, it is inappropriate for MACC to point to records that may be in the hands
> of non-parties when specifically asked about documents that MACC (and only
> MACC) would have access to, like its own policies, procedures, and protocols,
> among other things.
>
> We understand that you will be addressing the comments made in this
> morning's call before our next call on July 15 at 11 AM. We would like to
> resolve these issues without motion practice but will have no choice but to
> renew our motion to compel if we are unable to resolve the issues set forth in
> our April 9 letter.

(*See* July 8-21, 2021 Emails, collectively attached as **Exhibit J**.)

17.     The Parties again met and conferred on July 15, 2021, and Plaintiff's counsel

represented that he would be responding to QBE's April 9 deficiency letter by July 19, 2021.

18.     On July 20, 2021, Plaintiff's counsel emailed QBE's counsel, in part noting that:

"As you noted on June 24, 2021, MACC provided QBE with its Supplemental Response to QBE

[sic] Requests. In it MACC reiterates that document and information responsive to each request in

plaintiff's possession and control have been made available to the defendant." (*Id.*)

19.     On July 21, 2021, QBE's counsel requested that Plaintiff's counsel "[p]lease

confirm that you are representing that <u>all</u> documents in your client's possession, responsive to

QBE's First Set of Requests to Produce, have been produced." (Emphasis in original.) (*Id.*) In

response, Plaintiff's counsel stated: "Jean: Spoke with Ted this afternoon and yes we are reiterating

and again confirming that all documents in our client's possession and control have been produced in Response to QBE's First Set of Requests to Produce." (*Id.*)

20.    Based on Plaintiff's counsel's July 21 representation, QBE did not renew its Motion to Compel. However, as discussed further below, it has become clear that Plaintiff is in possession of responsive documents that it has not produced.

21.    In part, QBE's First Set of Requests for Production included:

- Request No. 2: Produce any other documents [other than those referred to in Your Rule 26(a) Disclosures] that You intend to rely upon in support of Your position in this litigation.

- Request No. 3: Produce all documents that You contend evidence any financial interest of Jason Kolodzinski in, or any benefit received by Jason Kolodzinski from, the Transactions.[2]

- Request No. 4: Provide all communications, including email, to or from Jason Kolodzinski related to the Transactions or the persons or entities involved in the Transactions.

- Request No. 5: Provide all communications, including email, to or from any MACC personnel, including Mike Anderson, Sr., Mike Anderson, Jr., Judy Arnold, Bill Thompson, Debbie Wick, Hazem Mutawe, Tiffany Santiago, Barbara Flores, Robert DeLuna, Terry Fakhoury, Jess Fakhoury, Johanna Vasquez, and Katie Keenan, related to: (a) the Transactions, including the persons or entities involved, or (b) Jason Kolodzinski.

- Request No. 6: Provide all documents related to any investigation of the Transactions by MACC.

- Request No. 8: Provide all documents related to any attempt by MACC to obtain proof that the services or items purchased in the Transactions described in Paragraphs 10(a), 10(b), and 10(e) of MACC's Amended Complaint in this litigation were not provided or were provided at an inflated price.

- Request No. 9: Provide all documents related to MACC's policies, procedures, or protocols for obtaining and paying for the types of services or items purportedly purchased in the Transactions.

- Request No. 11: Provide MACCs master vendor list, and any revisions thereto, effective from 2015 to 2018.

---

[2] QBE defined the "Transactions" to mean "the transactions purportedly resulting in MACC's purported loss as described in Paragraphs 10(a)-10(f) of MACC's Amended Complaint in this litigation."

- Request No. 12: Provide bank statements (and, if not included therein, images of cancelled checks) reflecting all purported payments by MACC for the Transactions.

(*See* QBE's First Set of Requests to Produce.)

22.     Through depositions taken to date and QBE's independent fact investigation, it has become very apparent that despite Plaintiff's repeated representations, all responsive documents to QBE's First Set of Requests to Produce have not been produced. The following are just some demonstrative examples that form the basis for this Motion:

- Plaintiff produced what appears to be part of an email thread between Nick Cornfield (owner of J&N Marketing) and Plaintiff's former controller Barbara Flores. (*See* J&N 000105, attached as **Exhibit K**.) This email refers to an attachment, but the version produced by Plaintiff contains no attachment. Further, Ms. Flores has testified that she sent an email in response to J&N 000105, which has not been produced by Plaintiff. (Flores Dep., attached as **Exhibit L**, 39:6-40:14.) These documents have not been produced but should have been produced in response to Request Nos. 3, 5 6, and/or 8. Indeed, there has been no production of email or other communications that would be responsive to Request No. 5.

- Barbara Flores has testified (as follows) that she received an email from J&N's owner Nick Cornfield, containing a U.S. Postal bulk mailing receipt. (Flores Dep., 41:21-42:9.) Plaintiff has not produced emails between J&N and Ms. Flores transmitting any U.S. Postal bulk mailing receipt(s). These documents should have been produced in response to Request Nos. 3, 5 6, and/or 8.

- Plaintiff produced what appears to be part of an email thread between Mike Anderson, Jr. and Barbara Flores. (*See* MACC 000260, attached as **Exhibit M**.) This email reflects an attached document titled "4MA002_FR_06531.PDF," but the version produced by Plaintiff contains no attachment. To date, no such attachment has been produced, but should have been produced in response to Request Nos. 5, 6, 8, and/or 9.

- Plaintiff has not produced a master vendor list, as requested in Request No. 11.

- In the automotive industry, vehicle deal jackets are commonly used in all purchase and sale transactions, and these deal jackets typically contain vehicle valuation information and vehicle history information, among other things. Indeed, at her deposition, Plaintiff's witness Judy Arnold referred to these deal jackets when answering questions involving Epic. (*See* Arnold Dep., attached as **Exhibit N**, 79:20-80:3.) These "deal jackets" have not been produced by Plaintiff but should have been produced in response to Request Nos. 3, 4, 5, 6, 8, and/or 9.

- The documents produced by Plaintiff to date reflect that Epic and Sir Hooptie had "NAD numbers," which Barbara Flores has testified are identification numbers assigned by Plaintiff for its vendors. She further testified that unless a third party is onboarded, a NAD number cannot be assigned to any third party and Plaintiff cannot make payments to such a third party.

Ms. Flores has testified that Plaintiff's onboarding process requires receipt of a W9 form from the third party. (*See* Flores Dep. 20:7-21:14.) W9 forms for Epic and Sir Hooptie have not been produced by Plaintiff but should have been produced (along with any other onboarding documents for all vendors at issue) in response to Request Nos. 6, 9, and/or 11.

- Mike Anderson, Jr. testified that "I'd be willing to bet almost anything that when I got that [text message], my dad sent that text to me, and then I purposely e-mailed myself those text messages so that I would have the date." (*See* Anderson Dep., attached as **Exhibit O**, 367: 6-10.) The text messages referred to by Mr. Anderson are attached as **Exhibit P**, but are undated. Plaintiff has not produced the text messages referenced by Mr. Anderson which were purportedly exchanged between Mr. Anderson and his father, or the email that Mr. Anderson referred to in his deposition. These documents should have been produced (along with any other responsive correspondence) in response to Request Nos. 3, 4, 5, 6, and/or 8. Plaintiff has not produced any other text messages whatsoever.

- Plaintiff's former employee Hazem Mutawe testified:

    Q: And other than myself for the purpose of scheduling this deposition. . . , have you spoken to anyone else regarding today's deposition?

    A: I was reached out by the [Plaintiff's] lawyers yesterday with a phone call, yes.

    * * *

    Q: So other than procedurally, and by procedurally I mean kind of keeping your answers short[,] answering the question and just generally how depositions go, what did you discuss with respect to Jason K?

    A: There was an email was [sic] sent to me with a piece of mail with my name on it, and I was told that that was a mailer that was done by Jason K but it was not - - never sent out. And then we discussed Mike Anderson and Judy and myself and Barbara Flores who will be - - reach out, and we have to give our testimony. . .

    * * *

    Q: . . . And you were told that the mailer in question was not sent out, correct?

    A: That is correct. I was asked specifically if I saw that piece of mail, and I said yes, I saw it as a material that was prepared to get mailed out. I was asked if it went out. I don't have any idea if it went out or not.

    (Mutawe Dep., attached as **Exhibit Q**, 5:9-6:18.) Plaintiff's counsel does not represent Mr. Mutawe. To date, Plaintiff has not produced the email referenced by Mr. Mutawe in his deposition, which is clearly responsive to Request Nos. 4, 5, 6, and/or 8.

- Despite multiple requests, Plaintiff has refused to produce Mr. Kolodzinski's work emails, and other than the one chain of undated text message screenshots (attached as Exhibit P), Plaintiff has produced no text messages exchanged with Mr. Kolodzinski or otherwise pertaining to the

Transactions. Such correspondence exists, as third-party Mr. Kolodzinski has produced texts messages between Mr. Kolodzinski and Mike Anderson, Jr. pertaining to the Transactions (*See* JK 000341- 366, attached as **Exhibit R**.) These correspondences (including the requested emails to or from Mr. Kolodzinski related to the Transactions and/or persons or entities involved in the Transactions, and all text messages exchanged between any individual affiliated with Plaintiff and Mr. Kolodzinski) should have been produced in response to Request Nos. 3, 4, 5, 6, and/or 8.

- As pertaining to the used car purchases as issue, Plaintiff has testified that it calculated its claimed loss by first taking the total of its purchase price of the vehicle and any amounts spent improving the vehicle, and subsequently subtracting from this total the ultimate sale price of the vehicle. (*See* Anderson Dep., 195:22-196:3.) However, for vehicles bearing stock numbers CP3821, CP3469, CP4004, CP4000, CP3991, and CP3974, Plaintiff has not produced documents reflecting the ultimate sale prices (such as customer orders). Such documents should have been produced (along with any other responsive documents), in response to Request Nos. 3 and/or 6.

- MACC has produced what appears to be images of the fronts of checks written with respect to the Transactions but has not produced images of the backs of such checks. Such images should be produced in response to Request No. 12.

- During Judy Arnold's deposition, QBE's counsel identified sale documentation pertaining to Mr. Kolodzinski's corvette (which Plaintiff claims was improperly traded in) as the basis for this claimed component of loss. (Arnold Dep., 208: 13-17.) QBE's counsel requested that Plaintiff produce these documents, but to date, Plaintiff has not produced same:

  > QBE's counsel: We would request, Counsel, that the sale documentation be provided on this because it hasn't been and the basis of the claim has always been just the delta between the trade-in value and – that he listed of 60,000 and the stated actual trade-in value of 50. That's always been the basis of this claim and Ms. Arnold is saying something different, that it's reflected in the ultimate sale price and we don't have that information.

  > Plaintiff's counsel: Well, we'll gather information that's relevant. I think the deposition of Haz actually touched on this point because on exactly what occurred on the day that Jason left with regards to this car.

  > QBE's counsel: That may be but, regardless, we don't have the documentation so we need it. That's all I am asking for.

  > Plaintiff's counsel: Okay.

  (*Id.*, 210:13-211:7.) Such documents should have been produced in response to Request Nos. 2, 6, and/or 8.

- During her deposition, Judy Arnold testified that when investigating charges by AC Kustoms, she referred to photographs on Plaintiff's website to determine whether a certain vehicle was improved by AC Kustoms. (Arnold Dep., 178:15-179:17.) Plaintiff has produced no

photographs of cars and no documents pertaining to the investigation referenced above. All such photographs and documents should have been produced in response to Request Nos. 2, 3, 6, and/or 8.

23. On November 4, 2021, QBE's counsel issued a letter to Plaintiff's counsel, noting in part that "Please note that Defendant maintains its position that Plaintiff's responses to Defendant's First Set of Requests for Production remains deficient and Defendant plans to file a motion to compel with respect to documents that should have been produced but have not been." (*See* November 4, 2021 Letter (without enclosures), attached as **Exhibit S**.) To date, Plaintiff's counsel has not responded to this letter.

### QBE's Second Set of Requests for Production

24. On November 4, 2021, QBE served Plaintiff with its Second Set of Requests for Production. (*See* QBE's First Set of Requests for Production, attached as **Exhibit T**.)

25. On December 6, 2021, Plaintiff responded to this Second Set of Requests for Production. (*See* Pl.'s Response to QBE's Second Set of Requests for Production, attached as **Exhibit U**.) For the reasons set forth below, Plaintiff's Response is deficient.

26. Request No. 1 requested:

All documents related to any co-op program applications, submissions, or reimbursements from 2016 through 2018, as pertaining to any advertising or marketing prepared by J&N Marketing. For avoidance of doubt, this request includes any documents or information with and/or accessible via the GM Global website, Chevrolet website, or any other portal or website accessible to MACC.

Plaintiff responded:

These records are not retained by MACC and were requested from GM. On November 24, 2021, General Motors produced a record of all payments to Mike Anderson Chevrolet from 2016 through 2018, the documents show that there were no payments made based on promotional work allegedly done by J&N or TKC.

QBE's Request was not limited to payments made by GM to MACC and Plaintiff's response that "[t]hese records are not retained by MACC and were requested from GM" confirms that Plaintiff

did not address Request No. 1 in full. For example, internal MACC documents related to its own submissions would not be in the possession of GM. QBE is entitled to records reflecting any applications or submissions related to J&N Marketing or an affirmative statement that no such records exist after proper investigation.

27.     Request No. 3 requested:

> All documents reflecting MACC's accounting treatment and allocation of funds between itself and any insurer on the sale of any insurance product, including but not limited to any gap protection, extended service plan, or warranty plan, included with the sale of all vehicles MACC purchased from Sir Hooptie and Epic in 2016 through 2018.

Plaintiff responded:

> Transaction documents relating to automobiles purchased by Jason Kolodzinski as initially requested by QBE insurance show all insurance information have been produced. Insurance transactions are not relevant to the sale pricing information of the car sale.

Plaintiff's response regarding what Plaintiff has produced to date is factually inaccurate. Both Judy Arnold and Barbara Flores testified that with respect to the cars at issue, MACC sold certain products on behalf of third-parties (such as gap protection, extended service, and warranty plans) whereby MACC profited. (Flores Dep., 95:6-97:23; Arnold Dep. 201:12-203:24.) The cost of these products were factored into MACC's claimed loss. (Arnold Dep. 246:17-247:12.) Further, the revenue generation by MACC in respect of the subject cars at issue is relevant to a proper calculation of any loss in this matter. Indeed, in Plaintiff's calculation of loss, as presented in its Amended Complaint, Plaintiff did not offset from its claimed loss the revenue generated from the sale of insurance products. Contrary to Plaintiff's Response, the requested documents are indeed relevant to Plaintiff's allegations.

28.     Request No. 4 requested "[a]ll documents related to all vehicles MACC purchased from Epic in 2016 through 2018, including "deal jackets" and their complete contents and all-sale

information." In response, Plaintiff stated that "Transaction documents relating to vehicles purchased from Epic in 2016-2018 by Jason Kolodzinski as initially requested by QBE Insurance show all relevant sale information and have been produced." Plaintiff has not produced the documents requested in Request No. 4, even though Judy Arnold alluded to these documents in her deposition, nor has Plaintiff objected to this Request. (Arnold Dep. 79:2-80:3.) Plaintiff continually refers to what it says it was asked to produce at the outset of the insurance claim review, long before this litigation commenced. Regardless of what may have been requested then, the requests in this litigation are what remain at issue and Plaintiff has no basis not to produce the requested documents. For context, Plaintiff claims a loss on 91 of nearly 400 cars purchased from Epic. The other 300 or so cars generated a profit for Plaintiff. Defendant is entitled to the records of all cars purchased from Epic, not just those Plaintiff chooses to cherry-pick. Plaintiff is alleging the whole relationship with Epic was fraudulent, yet it made money on the whole.

29.     Request No. 5 requested "[a]ll documents regarding the Chevrolet Corvette bearing VIN No. 1G1YK32D70H5103027…" The documents produced by Plaintiff in response to this Request were generally illegible. (Attached as Exhibit U.)

## QBE's First Set of Interrogatories

30.     On November 4, 2021, QBE served Plaintiff with its First Set of Interrogatories, containing five contention interrogatories regarding the basis of the allegations contained in Plaintiff's Complaint. (*See* QBE's First Set of Interrogatories, attached as **Exhibit V**.)

31.     On December 6, 2021, Plaintiff responded to this First Set of Interrogatories. (*See* Pl.'s Answer to QBE's First Set of Interrogatories, attached as **Exhibit W**.) Each of Plaintiff's answers are deficient because they do not respond to the interrogatory posed.

32.     For example, Interrogatory No. 1 requested:

13

"Explain the complete basis for your contention that no services were performed by J&N Marketing for MACC, including the identification of all evidence supporting such contention."

Plaintiff responded:

"No ads submitted for approval, therefore if any ads were sent out, they were done without authority."

33.  QBE's contention interrogatory asked for the factual basis that *no services were performed* by J&N. Plaintiff only responded with their claim that ads were placed without authority. This is unresponsive and evasive as Plaintiff has not stated the basis for their Complaint's allegation that no services were rendered.  (See Plaintiff's Complaint at ¶ 10). Importantly, whether Kolodzinski placed ads in violation of MACC policy requiring authorization is irrelevant.

34.  Plaintiff answered Interrogatory No. 2 (identical to No. 1, but with respect to third-party TKC) in a similarly nonresponsive and evasive manner. That is, Plaintiff stated there were "specific instructions not to run radio ads" and "they were done without authority." As with No. 1, this response does not provide the basis that no services were performed and, therefore, is unresponsive and evasive to QBE's interrogatories.

35.  For Interrogatories Nos. 3-5, Plaintiff again failed to respond to the interrogatories posed. For example, Interrogatory No. 3 stated:

"Explain the complete basis for your contention that Jason Kolodzinski unlawfully took money or property from MACC with respect of the Transactions, including the identification of all evidence supporting such contention."

Plaintiff responded:

"Jason Kolodzinski received kickbacks from J&N Marketing which was contrary to his duty of loyalty to MACC as well as specifically prohibited by the HR Policy of MACC to which he was bound. Additionally, a message was received reflecting that Jason Kolodzinski was buying cars from Epic because Jason needed more money."

14

36.     Instead of Plaintiff stating the basis that Kolodzinski *unlawfully* took money or property *from MACC*, Plaintiff evaded the interrogatory by referencing purported kickbacks to Kolodzinski and irrelevant purported violations of MACC's HR policy. Moreover, Plaintiff fails to identify the evidence supporting the basis for their allegation that Kolodzinski unlawfully took money or property from MACC. Whether Plaintiff violated HR policy is not at issue in this case. Rather, the issue is whether Kolodzinski *unlawfully* took money or property from MACC and the basis for this contention. Thus, Plaintiff's answer is nonresponsive.

37.     Plaintiff answered Interrogatories Nos. 4 and 5 in a similarly evasive and nonresponsive manner. As with No. 3, each of these contention interrogatories also required Plaintiff to identify all evidence supporting the contention stated in the interrogatory. Plaintiff failed to do so, merely restating various allegations without providing the basis for the allegations or identifying the evidence that supports the allegations. (S*ee* Exhibit W, Interrogatories Nos. 4 and 5.)

38.     Further, Plaintiff did not sign this document.

39.     Rule 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(5) provides that "[t]he person who makes the answers must sign them . . ."

40.     Plaintiff has not signed its Answers to QBE's First Set of Interrogatories.

## **CONCLUSION**

WHEREFORE, Defendant, QBE Insurance Corporation, requests that this Court grant its Motion to Compel and enter an order requiring Plaintiff to fully and completely respond to Defendant's Requests for Production and Interrogatories as more fully described above and for all further relief that this Court deems just and equitable.

Date: December 17, 2021

Respectfully submitted,

KAUFMAN DOLOWICH & VOLUCK, LLP

/s/ Stefan R. Dandelles
Attorneys for Defendant QBE Insurance
Corporation

Stefan R. Dandelles (ARDC No. 6244438)
Jean Y. Liu (ARDC No. 6321017)
KAUFMAN DOLOWICH & VOLUCK, LLP
135 S LaSalle St., Ste. 2100
Chicago, Illinois 60603
(312) 759-1400
sdandelles@kdvlaw.com
jliu@kdvlaw.com

4889-8153-1905, v. 2

16

## **Compliance with Local Rule 37.2**

In compliance with Local Rule 37.2, Plaintiff's and QBE's counsel telephonically met and conferred on multiple occasions regarding QBE's concerns that Plaintiff had been incomplete with respect to its production to date, including on April 8, 2021; June 10, 2021; June 22, 2021; July 8, 2021; and July 15, 2021. QBE's counsel sought to meet and confer on December 17 to discuss the incompleteness of all discovery answered to date, but Plaintiff's counsel failed and refused to make themselves available for even a five-minute conversation. (*See* December 17, 2021 Emails (1)-(3), attached as **Exhibits X, Y, and Z**.)

4889-8153-1905, v. 2